Case No. 16-1200 United Airlines, Inc. Petitioner v. Transportation Security Administration Mr. Feinberg for Petitioner, Mr. Clare for the Respondent Good morning. May it please the Court. Adam Feinberg on behalf of Petitioner, United Airlines, Inc. with me and Adam Brastic. This case involves a September 11th security fee which is imposed on domestic airline passengers and for which United Airlines and other carriers involuntarily serve as a collection agent for TSA. Pursuant to a provision in the fee statute that specifically allows for refunds of any fee paid by mistake or any amount paid in excess of that required, United on April 8th of last year submitted a refund request of approximately $1.5 million that it erroneously paid under the statute and regulations. TSA refused to consider the merits of that request, issuing a denial in a four-paragraph email just ten days later. And although it wasn't clear in the administrative proceedings, TSA's sole reason now is clear that its theory is that the doctrine of issue preclusion bars United's refund request, with the earlier supposedly preclusive decision coming in the form of a 2012 audit report that TSA had performed. I thought their main argument was less issue preclusion than time bar. Well, you can ask the government that question, but that's not what it seems to me their main argument is. They expressly state in at least a couple places in their brief that their main argument is the doctrine of issue preclusion. If the argument is time bar, it's not even clear how that would work. It's not a specific time period. Their argument is essentially whenever we conduct an audit, that cuts off your rights to seek a refund. But there's no time period associated with that, and I'm not aware of any time limitations period or claim filing deadline that has an indefinite period of time. What about the argument, which should be the first, I guess, that we have no jurisdiction? Well, Your Honor, I think there are a couple reasons why that argument goes nowhere. The main one is a factual argument. There simply wasn't a request for reconsideration or an appeal. It's unclear what TSA even claims this was, and I assume you're referring to the June 7th email that United sent after the denial. It's very clear, if you read that entire email, that all United was doing, this is literally from the words in the email, requesting TSA's, quote, guidance concerning TSA's rules and procedures for obtaining administrative review. Well, you did state we are seeking review, didn't you? Well, I agree, Judge Silverman. Those words are in the email, but if you look at the entire context of the email, I think it's abundantly clear that they were asking for guidance on whether they could pursue further administrative review, and if so, how. And, in fact, the email contains the following line. It says, because we are hoping to keep this matter within TSA's administrative review process, we ask for your reply by June 10th, 2016, which is a week before the petition in this court would have been due. Did you make a point of what was the reply? What was the reply from? What was the government's reply to this email? Well, that is, we did make a point in our brief, because I think this is a very important one. This, and this, their reply, which can be found. The reply was that we have no procedure. Correct. Not only was there a reply that we have no procedure, and this is at page 48 of the joint appendix, but it says, it describes the June 7th email from United as something that, quote, sought guidance concerning how to obtain administrative review. It doesn't say anything of, we received your request for further administrative review, or for reconsideration, or for appeal. And, by the way, that same theme comes out in TSA's certified index to the administrative record, which is at page 2 of the joint appendix. It describes the April transactions as a, quote, request for refund, and then a denial, that being the April 8th and April 18th documents, but then describes the June email as seeking guidance on how to obtain administrative review. And then in TSA's response, there's no mention of any sort of appeal, request for consideration, or any denial of anything, just in the way TSA described it. These are items 8 through 11 of the index. So I don't think there's any plausible argument factually that there's lack of jurisdiction. By the way, I would add one other point. There's a legal preclusion to their argument as well, and that is the cases that they cite, including the Brotherhood of Locomotive Engineers case from the Supreme Court, and this court's decisions in Sendra and Telestar, establish that this notion of jurisdiction applies if there is a timely request for reconsideration. And, of course, TSA's position here is not only was it not timely, but even the only possible date that they could have applied is a 30-day review period, and this supposed request for reconsideration in June comes more than 30 days after the actual denial on April 18th. So even under the cases that the government cites, there's no lack of jurisdiction because the doctrine simply doesn't apply here. And I'd like to, if that answers your questions about jurisdiction, Judge Silverman, to return to the main question of issue preclusion. And here I think at bottom there's simply no basis for finding issue preclusion here. First of all, an audit has no preclusive impact in any other circumstance that we know of. I'm talking about federal taxes, state taxes, other user fees that work like this, and TSA has not cited one example where a user or an audit can have preclusive effect. And I think that's simply because of the basic notion that audits are not adjudicatory in nature. It simply doesn't apply. Issue preclusion just doesn't apply to this sort of thing. And, of course, nowhere has TSA informed anybody ever that these audits are going to have preclusive effects and it would yield bizarre results. And Judge Pillard, your question about the timing, this is so bizarre the way TSA would have it go. So in this case, the audit period ended on March 31st of 2016, and sometime after that, but before August of 2016 when the audit was actually conducted, United was notified that there were going to be audits. And under TSA's theory, United... You said 2016. I thought it was in 2012. Oh, I'm sorry. You're exactly right. In 2012, all of those same dates in 2012.  So if United wanted to seek a refund request associated with March of 2012, it would have had to have done that only a few months later, by the end of the audit in October or so of 2012. I don't know of any statute of limitations that has that sort of indiscriminate period. And, by the way, TSA doesn't even audit every carrier. It certainly does the large carriers, but there are some small carriers that never get audited or get audited infrequently. And then even under TSA's view, there would be an unlimited claim filing deadline or whatever you want to call it. But we cited a case called Swisher International from the Federal Circuit that dealt with this exact situation and found that if the regulations or statute doesn't have a claim filing deadline, that deadline is unlimited. And that's exactly what we have here. And, of course, TSA can solve this problem itself simply by promulgating a regulation. So back to the... Wouldn't it be the six years under the APA? It could. That's the other alternative. But here, if that applies, then the claim is timely as well. But I think the true answer is it's unlimited unless and until TSA promulgates a claim filing deadline. On the issue of preclusion, the B&B hardware case, which we cited in both of our briefs, says this, quoting from the restatement, the issue of preclusion applies when an issue of factor law is actually litigated and determined by a valid and final judgment and the determination is essential to the judgment. And so unlike claim preclusion, the Supreme Court described in the Soonen case that we cite, parties are free to litigate points which were not at issue in the first proceeding even though such points might have been tendered and decided. So the issue has to actually have come out and been decided. And this Court's decision in Nasum v. Brown, I think, is a critical one, and we cited this in our brief because it shows that if one of two things could have happened and it's not clear what the Court's judgment is based on, then issue preclusion applies to neither of them. And what that means is that even if the government can show some doubt as to whether or not it looked at whether a refund was appropriate, the doubt works in our favor in this context because unless there's an explicit decision by the Court, or in this case the agency, claim preclusion cannot apply. And I would note, just as a factual matter, that the TSA relies on this line from the audit. This is at Joint Appendix page 32. This says, the audit determined the United's compliance as well as the amount and nature of the liability to the TSA Office of the Revenue. And I think TSA's argument is that the word liability refers to its overall fee liability. And as noted on page 31 of the Joint Appendix, it had remitted $660 million in fees over this period. But there's nowhere in the audit report that says that was the correct amount. And, in fact, TSA wasn't looking at whether or not the amount submitted was correct or overpaid. It was only looking for an additional liability. And that's revealed in the very next sentence of the Joint Appendix on page 32 under the results section where it says, we found United Airlines had no liability due to TSA for incorrect imposition, collection, or remittance of the fee. It didn't say that the $660 million was correct. It said only that it has no liability, which shows that all TSA was looking at was additional liability. And, by the way, their review provision, they don't cite one, but they cite this 30 days, which I presume comes from 49 CFR 89.21. We cited that in our opening briefing. TSA doesn't disagree or didn't come up with anything else. That review provision that they say applies here applies only to debts that are owed to the government. It's a debt collection review provision. It says nothing about the ability to challenge amounts that you claim are owed by the government to you, which shows that even TSA didn't think that this audit was considering amounts that might have been due to United. Thank you. The statute that you're relying on basically says the Secretary may refund. It doesn't require it to be done. Could TSA promulgate a reg that simply says we're not going to entertain refunds? I don't think so, Your Honor, because this is the issue that happened in this Court's Dixon decision in a very different context. An agency has an ability to come up with procedures, claim filing procedures, for example, so it might deny a valid request for a refund on a time basis if it had promulgated a claim filing deadline. But it still is subject to the normal APA review for arbitrary and capricious abuse of discretion, or not in accordance with the law, review for any action that it takes pursuant to that. And so once a refund is presented to the agency, it has to act under that normal APA standard. And here, actually, I think the standard is not even arbitrary and capricious or abuse of discretion. I think it's not in accordance with law because it was acting solely in the capacity of like a judge would in finding that issue of preclusion applied. And I think, therefore, this Court should be reviewing that question de novo. Thank you. Thank you. Good morning, Your Honors. May it please the Court. I'm Jeffrey Clare. I'm Justice Department counsel for PSA in this matter. Your Honor, decades of this Court's precedent make clear that if a matter is pending on reconsideration or appeal before an administrative agency that it requests that the petition be reviewed. My counsel, this argument strikes me as extraordinarily weak. There was a request to determine whether there was a procedure for rehearing. Wasn't there? And the government's response was there's none. Well, Your Honor, the request is at page 44. Yes, I've read it. And it says in addition. One sentence that we were asking, but it went on to say, is there any procedure? Well, it asks for guidance as to how to proceed, Your Honor. And I think it's a commonplace among attorneys to file an initial document like a notice of appeal, a petition for review that makes sure the appeal was timely and is a placeholder for protecting the jurisdiction of the appropriate form, and then after invoking the appeal to ask if there's some question for us for guidance. And the response was we have no procedure. The response was that the audit was final and no longer subject to review. Exactly. The audit, which took place in October 2012, so any time for review and for seeking reconsideration or appealing from administrative review on TSA's view expired years before. Yes. So the notion that you would then take what in TSA's view is a completely null effort to, even if it were directly an effort to seek administrative review, you can't say, well, the null filing in 2016 somehow rendered non-final something that TSA believes was final as of 2012. Or is this an alternative argument? Well, Your Honor, the request, as we considered it, was essentially to look again at the audit findings. And the agency made by issuing a refund for amounts that, in the petitioner's view, were inappropriately remitted. And there was an agency decision saying, no, you have no such rights at this juncture. And then you have this document at page 44 that says in very present tense, non-conditional, non-future terms, we request review of that decision in conjunction with the request for information as to how to proceed. Well, that was United's position. But what I'm saying is that TSA's position was, your time to appeal the audit expired in January 2013. So I guess I'm just having a little bit of trouble understanding how the agency's position now could be, oh, but by the way, it was on administrative review when this case was filed with us. Let me make one more point, if I could, and then leave this issue. I can imagine why you want to leave this issue. As a matter of fact, counsel, if I may interrupt for a second and ask a very pointed question. Was this issue, this administrative review question, approved by senior people in the civil division? Yes, Your Honor. Well, I have a reviewer who is senior to me who reviews this. I suppose you can detect from my question that I'm troubled that justice would even make this argument. I understand, Your Honor. It's so extraordinarily weak. Yeah, I understand that. It's even weaker than the rest of the case. Okay, Your Honor. Well, perhaps let me move on to what Your Honor regards as the less weaker points in the case. Your Honor, when the agency sent out its auditors in 2012 to determine whether the appropriate amount of fees had been collected and remitted to the agency, it made a final determination of whether fees were collected and remitted in appropriate amounts. It was not limited to ferreting out underpayments. It was its purpose, its intent was to assess compliance with the totality of the statute. If overpayments had been detected. But you never gave any notice, even if that was your purpose. There's never any notice given by form of regulation or guidance or anything that would suggest that was your position. Well, Your Honor, the statute directs the agency to verify that fees are collected in the appropriate amount. The audit is the agency's means of determining whether that is so. I'm asking about the question of whether your view that it was preclusive with respect to underpayments as well as overpayments. There's no notice of that to the effect which leads counsel to argue that this should, if this was your position, it should have been done by notice and comment in the rulemaking. Well, let me unpack that question if I might, Your Honor. First of all, as Judge Perlard observed, our argument is not really a claims preclusion argument. It is a time-bar argument. The cases we rely on, California v. Sanders and B.L.A., B.I.C.C., are cases that say once an administrative decision has been rendered, you can't revive appeal times by asking for reconsideration of that decision and then trying to appeal from a new decision on reconsideration. None of those cases talk about claim preclusion. No, I'm still on the notice question. It's hard for me to imagine why an airline would have realized that that was your position, that your position was going to be what your position is in court with respect to the preclusive nature of the audit. Well, Your Honor, the audit... With respect to refunds. Well, Your Honor, the audit determination, the final audit findings that are accepted by TSA and communicated to the audited candidate state that this is the agency's final determination of the liability and amount of fees due in compliance. That's... Yeah, sorry to interrupt. That's right. I think the trouble that we're having is that you can imagine a regime in which it's TSA says, we're going to take care of our potential, you know, any shortfall in what you owe us. We're going to go out and make sure you're not, you know, gouging us. And it's up to you to figure out and hire your own auditor or whatever or submit questions when we set out to do our audit if you want to cover your interests. That's one possible approach to an audit. Another possible approach is, okay, we're going to go out when we audit, and we don't have to audit and there's lots of airlines we don't, but when we audit, it's going to be account clearing for everybody. It's going to be bilateral, and whatever we find out is, you know, speak now or forever hold your peace. If you had that regime, I think your argument would have some legs in terms of, you know, what happened in 2012. The difficulty, and I think, you know, what Judge Silverman is probing is there's a basic idea that there has to be notice to the entity, which animal was this? And I don't see in the record, and it would be helpful if you could point us to your best place where you think this is rendered clear because there's a lot of ambiguity where TSA's communications and regulations talk about what I would characterize as my first potential regime. You know, we're just trying to cover our bases and make sure we're not, we, TSA, are not getting underpaid. Well, Your Honor, first let me separate the question of how the audit process is described from how the audit procedures actually work. In point of fact, every audit looks at the totality of compliance with the statute. If overpayments are uncovered, they are taken into account in the audit. We have other instances where carriers have been, and I did verify this with my agency counsel, we have other instances in which overpayments were detected in an audit and offset against liabilities. So what actually happens is overpayments and underpayments, any matter bearing on compliance with the statute, is in fact taken into account. Not exactly. I mean, you talked about in the record the audit is to verify that the security service fees were properly collected and remitted, a little bit ambiguous. We assessed United's compliance, found United Airlines had no liability, not that we didn't have any liability to it. And when they talked about these, you know, the transferred passengers, they were looking at whether any of the, whether United paid, claimed that more passengers that flew on United were actually transferred over from other airlines than was the case. They didn't look at the converse. If they had, they would have found this million and a half shortfall, wouldn't they? Well, no, no, and no. First of all, this is a sample audit, so it is certainly possible that there are planes outside the sample that were not captured. Secondly, if I could just describe the audit process briefly. The auditors go out, they take a sample of 600 passenger itineraries, which provide all the information the agency needs to know about whether fees should collect it, who should have been collecting them, how they were handled by the carrier, where they were remitted. Everything you would need to know to know whether the fee was properly collected, under collected, or over collected. So the audit process is, in fact, designed to capture this information. And none of those 600 had also this asymmetry in terms of the currency? Well, there's an assertion in terms of the currency. While that is, there is, in addition to sampling passenger itineraries, the agency looks at the account ledger. It looks at, this is the total amount collected and remitted. The agency noticed a discrepancy between the amounts collected and the amounts remitted. It also noted that there are not an even multiples of $2.50, which is the amount of fee collected. So that clearly indicates the agency is picking up instances in which the amount actually remitted to the agency varied according to the way the currency exchange rates fluctuate. So that is information that, again, is also collected in the audit. As a matter of settled administrative practice, it is simply not true that the audit doesn't look at potential overpayments. There are other instances in which the agency has uncovered overpayments and offset them against that. Well, that's sort of fortuitous. In other words, the focus is not underpayments. Excuse me, the focus is not overpayments. It's underpayments. If you happen to see there's an overpayment, then there's an offset. But that's not the focus. Your Honor, respectfully, that's absolutely incorrect. Your Honor, these audits are conducted in accordance with General Expenditure. Where does it state? Where does the agency state that that's its purpose? Page 26 of the Joint Appendix. This review asserts it's the final September 11th security fee compliance examination of United Airlines for this period. Yes, but it never states that our purpose is to check overpayments as well as underpayments. And once the audit is finished, that solves the issue either way. Your Honor, I recognize this is hardly a persuasive argument for agency action, but that would be a really, frankly, preposterous kind of way of administering the statute. To send your auditors out for a week to dedicate all your resources to looking at liability and to not looking at an overpayment issue that can present it years after the audit fact, that's simply not the way the agency does business. It's not consistent with the statutory directive. It's possible, but certainly one doesn't necessarily conclude that as an airline looking at it beforehand. That goes to my notice problem. Your Honor, the auditors, this is not a rigidly formalized process. The auditors go out, they have discussions with the audit entity as to how the audit is going to proceed. They have discussions about appropriate sampling methodology. But you're the one who's arguing formalism because you're the one who's arguing preclusion. Well, again, Your Honor, we are not arguing preclusion. We are arguing that. Well, you do have a separate preclusion argument in your brief, and I thought that was pretty. I mean, if it were preclusive, then we would be out of business in terms of APA review. I mean, it just can't be right. Your Honor, I think any kind of time bar issue is kind of akin to a preclusion issue. Separate section in the brief on preclusion. Well, I think those preclusion principles all kind of derive from the statutory limit on review of a final agency order and the implications for how that review scheme would work if parties could simply come back with successful decisions. I take your point, but it is not a preclusion argument. Okay. Thank you. It's a time bar. Counsel said that TSA does not audit every airline. And so the ones who are unaudited, are the rules for refunds different for them? Well, they would be different only in the sense that there's not a final determination  So they wouldn't have the same sort of time bar issues for requesting a refund. So what is your position on the time limit in which they must request a refund? If it was united and they had the similar kinds of what they thought were overpayment issues, six years, no limit? Well, there's no time bar arising from a final determination because there is not one. If they were to come in with a request for a refund, at some late period, the agency would have... Twenty-five years later. Right. If the agency would have some discretion because the statute says the agency may refund overpayments, to consider whether their request is unreasonably untimely, whether there is sufficient information to evaluate the request, and so forth. In terms of whether there would be a time limit on that action, I believe there's no administrative time limit. It isn't the only limit that I can think of. It's the statute of limitations period that Your Honor referred to earlier, that APA actions... We might argue latches at that point. Well, Your Honor, we would submit that even apart from the finality concerns we've raised here, here's a party coming in four years after the audit, after the agency's record retention requirements have expired, making it very difficult for the agency to evaluate the request in circumstances where, bear in mind, Your Honor, the carrier has all the information it needs to make these kinds of arguments. They are the ones that account for it, that impose the fee in the first instance, that account for it. They have their own records. This is information that's on TSA's behalf. On TSA's behalf. Yes. It seems like all of that is true, and you seem to recognize that there is a statutory directive to refund overpayments. So, you know, if the agency recognizes that that's part of the responsibility, why not a regulation which just says what the rules are? Well, regulations certainly would have been helpful in this case. Your Honor, I will say that, again, because it is the carriers that are responsible for administering the program in the first instance, we don't see a lot of cases in which errors are made in the government's favor. We see many more cases in which there are underpayments, and there is a much more sort of routinized, regulatory-controlled process for that. As Petitioner's Counsel has described, part of the reason you don't have a more elaborate set of rules and a somewhat more ad hoc process for this kind of thing is we just don't see that many claims. Nonetheless, when the auditors go out, the carrier is free to bring any information it thinks is relevant to the auditor's attention. And to have a system where the agency dedicates all these resources to looking at 600 passenger itineraries and the 1,400 plane segments and looking at anything that bears on the amount of fees that should be collected and remitted, and to say, well, the agency is just sort of ignoring any instance in which there's been an overpayment, is simply not a sensible way of administering the statute. It is, in point of fact, not the way the agency administers the statute. Indeed, what does the carrier think is going on when the auditors show up? That they're only looking for underpayments? Nothing conveys that to them. It is a component. Well, I'm curious, and maybe you don't know this, but in, for example, a typical government contracting situation, it would not surprise me if government compliance officials looked at whether the government was getting its value for its money. And if it seemed to be getting windfalls here and there, it might just not worry about that and say, that's on the counterparty to bring that up. I mean, it just seems like in the contracting world, you know, sometimes you think, well, goodwill, you know, we got lucky, or you just don't even look for it because it's not in the interest of the person who hired you to go out and investigate. Well, Your Honor, that may be. I don't know about the contracting world, but it's certainly not true in this world. The statute and on that section 44940, subsection D4, the undersecretary may require the provision of such information as the undersecretary decides is necessary to verify that fees have been collected and remitted at the proper times and in the proper amounts. If that proper amount, it's not a proper amount if it is more than the statute requires. In other audits where the agency has found overpayments, it has characterized that as a compliance issue, as a noncompliance finding, because the fees are not being processed and collected in accordance with the way the statute dictates. Do you have a citation for that when you say that? Well, these are other audits that are not in the record. They are judicially noticeable. Again, if the court would like, I can file them with a motion for judicial notice so the court can see that. Would the court be interested in that? I'm not sure that's something that we can take judicial notice of. Maybe you'll have a further opportunity to put that in the record. I'm sorry. Is the court requesting a motion for judicial notice? No, we're not. Leave that. Again, Your Honor, aside from me, I'm saying I'm running over my time. If I could just have a quick moment. Even apart from the question of whether the audit is final, a refund decision, the statute, subsection G, gives the agency discretion as to whether to consider a refund. And the very same policy considerations we've articulated in the brief, the interest and finality, the limitation on the agency's resources, the inability to document these things in periods after the three-year record retention requirement has expired, the inability to chase another carrier if it is the carrier's responsibility, and the attendant impact on whether the appropriate amount of fees have been collected, all those instances would certainly warrant an exercise of discretion not to honor the refund request. If the court is persuaded by Petitioner's argument that the agency should have entertained this appeal, it can, of course, man to the agency for a consideration of whether a refund would be appropriate, but I think the writing is really on the wall here. The agency has articulated some important policy considerations and certainly reasonable ones as to why a refund request four years after the audit has been completed doesn't warrant further consideration. Thank you. Thank you, Mr. Clyde. Mr. Feinberg, you had no time left. We'll give you a minute of rebuttal time if you think there's something you need to respond to. Yes, Your Honors. I have four very brief points. First of all, just to clarify this issue about the time bar, I think the two issues about time bar versus issue of conclusion merge because the government says, well, it's time barred because you have to seek reconsideration. We say, no, no, no, we don't have to seek reconsideration because we're not reopening the past issue. This is a different issue, and so it's the same thing. You have to have the time bar only applies if there is issue preclusion. We say there isn't, and so you don't get to the time bar question. I don't think it's if it's issue preclusion. I think if the final action was in 2012, that's what they're saying. It's not preclusion in the sense that because that's a judicial decision, it's that you missed the boat on bringing that to us in their view. Correct, but that seems to me to be an issue preclusion test because the issue in this case is what's the scope of what you should have brought to our attention, and that's analyzed under a normal issue preclusion analysis and so forth. So was there a final decision then on your claim? And if there was, it's time barred. If there wasn't, it's not. Exactly, but we didn't make any such claim. They happened to look at an underpayment of a couple dollars here and there, but it wasn't presented to them, nor did they actually decide, which is the past for issue preclusion, the underpayments that we're talking about here. Why did it take so long? Well, these are very complicated matters, and they didn't realize how some of the systems were set up, which is what happened here. By the way, one of the other minor points I wanted to make is about the 600. And Mr. Clare said that, oh, well, this issue wasn't in the 600. That's not true. We submitted the evidence that we submitted the filing in the claim for refund that was submitted on April 8th contained not a sampling, literally data on every single ticket to which we thought there was an overpayment on this involuntary passenger issue. So there's no issue about the records not being there. We have preserved the records and have now presented them to the government. On the other hand, if the government thinks, well, we want to- Are you saying that the audit dealt with a sampling? Correct. Your refund deals with all transactions in which you're entitled to a refund, which go way beyond the sampling. That's correct. And is there overlap? If they had looked at those that they sampled for overpayment, would some of those records have enough information to have made the kinds of points that you make in your fuller review? Yes, they would have. And so these issues were there for everybody to see if somebody had looked very carefully at them, but nobody understood that that was the purpose of this audit. Obviously, if anybody had, we would have looked at this. And the final point I wanted to make was Mr. Clare's comment that this would be preposterous to work it the way we're suggesting. Well, this is the way the IRS works. This is the way almost every state works. And this is the way other agencies work that have similar fees. And I mentioned the Swisher case that was in the federal circuit. Customs added a statute of limitations after this case, learning the lesson. That can be found at 19 CFR 24.24E4-2I. But the Swisher case also talks about the fact that customs has the right to audit, and in fact does audit pursuant to a provision that is identical or nearly identical to the one in this case. In the customs side, this was a harbor maintenance tax. It was at 19 CFR 24.24G, and it's discussed towards the end of the Swisher case. And so the notion that you have the right to audit as the government has nothing to do and isn't preclusive whatsoever with respect to the right to seek a refund. All right. Thank you. Thank you, Mr. Feinberg. The case will be submitted.
judges: Brown, Pillard, Silberman